UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 26-06224 RAO Date: October 16, 2026
Title: Mahan Ayazi v. Southern California Gas Company

Present: The Honorable **ROZELLA A. OLIVER, U.S. MAGISTRATE JUDGE**

| C. Delgado | N/A |
|---|---|
| Deputy Clerk | Court Reporter/Recorder |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| N/A | N/A |

**Proceedings:** (In Chambers) **ORDER RE: PLAINTIFF'S MOTION TO REMAND [9]**

Plaintiff Mahan Ayazi moves for this Court to remand his case back to state court. Dkt. No. 9. He initially filed suit in Los Angeles County Superior Court and Defendant Southern California Gas Company subsequently removed the case to federal court. Dkt. No. 1. In his motion, Ayazi argues that the Court lacks subject matter jurisdiction and that removal is defective. No. 9-1. The Court previously vacated the noticed hearing for August 5, 2026, finding the matter suitable for decision without oral argument. *See* Dkt. No. 15; Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, Ayazi's Motion to Remand is DENIED.

## I. BACKGROUND

Mahan Ayazi worked for Southern California Gas Company ("SCGC") from 2001 to 2024. Decl. Janine M. Braxton ISO Notice Removal, Ex. A ("Compl.") ¶ 7, Dkt. No. 1-3. In 2017, he suffered an injury that interfered with his work as a fleet technician. Compl. ¶¶ 8, 11. After some time working on light duty, plus a leave of absence, SCGC granted Ayazi disability benefits in 2022. Compl. ¶¶ 12, 14; Decl. Stephanie Henley ISO Opp'n Remand ("Henley Decl.") ¶ 5, Dkt. No. 12-1; Decl. Mahan Ayazi ISO Reply ("Ayazi Decl.") ¶ 3, Dkt. No. 13-1. SCGC also required him to secure another position or it would terminate him. Henley Decl. ¶ 5. Although Ayazi attempted to secure another position, he was unable to, and SCGC terminated him on September 13, 2024. Compl. ¶¶ 18, 24.

On April 29, 2024, before his termination, Ayazi moved from California to North Carolina. Ayazi Decl. ¶ 6. He explained that he moved because he could not afford to live in California, and his father, sister, and aunt live in North Carolina and could support him. Ayazi Decl. ¶ 6. He also

sold his house in California, purchased a house in North Carolina, and registered to vote there. Ayazi Decl. ¶¶ 5, 8, 14.

While Ayazi currently resides in North Carolina, he maintains that he intends to return to California when he can afford it. Ayazi Decl. ¶ 11. He still has bank accounts and family in California. Ayazi Decl. ¶ 16. And he has sought reinstatement with SCGC. Ayazi Decl. ¶ 13.

Ayazi alleges six causes of action against SCGC including disability discrimination and wrongful termination. Compl. at 5–12. He seeks damages for lost wages, general damages, punitive damages, and attorney's fees. Compl. at 12. Ayazi filed his complaint in Los Angeles County Superior Court on May 21, 2026. Compl. at 1. Eighteen days later, on June 8, 2026, SCGC removed the case to federal court. Notice Removal at 1. Eight days after that, on June 16, 2026, Ayazi effected service. Mem. P. & A. ISO Mot. Remand ("Pl.'s MPA") at 7, Dkt. No. 9-1.

On July 8, 2026, Ayazi filed a Motion to Remand, SCGC filed its Opposition on July 15, 2026, and Ayazi filed his Reply on July 22, 2026. Pl.'s Mot. Remand, Dkt. No. 9; Def.'s Opp'n Mot. Remand ("Opp'n"), Dkt. No. 12; Pl.'s Reply ISO Mot. Remand ("Reply"), Dkt. No. 13.

## II. LEGAL STANDARD

A defendant may remove a civil action from state to federal court if the federal court has original subject matter jurisdiction. 28 U.S.C. § 1441(a). If subject matter jurisdiction is based on diversity, the parties must be citizens of different states, and the amount in controversy must exceed $75,000. § 1332. A plaintiff may move to remand the case back to state court by challenging either (A) subject matter jurisdiction or (B) a "nonjurisdictional defect" in removal. *Casola v. Dexcom, Inc.*, 98 F.th 947, 953 (9th Cir. 2024).

Federal courts maintain a "strong presumption" against removal jurisdiction, and they must reject it if they have "any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Therefore, the burden of proving the right of removal rests with the removing defendant. *Id.* at 566–67.

## III. DISCUSSION

SCGC has met its burden of proving that the Court has subject matter jurisdiction and that SCGC properly removed the case to federal court. Ayazi challenges subject matter jurisdiction on two grounds. First, despite his move to North Carolina, Ayazi considers himself a citizen of

California. Pl.'s MPA 9–12. Ayazi contends that, given that he and SCGC are citizens of California, the parties are not diverse. Pl.'s MPA 12. Second, Ayazi attacks SCGC's evidence of amount in controversy. Pl.'s MPA 13. For its part, SCGC responds that Ayazi's understanding of citizenship is mistaken and his demand for further amount in controversy evidence expects more than SCGC must offer. Opp'n 9–18.

Ayazi also contests that SCGC's removal was procedurally invalid, citing 28 U.S.C. § 1441(b)(c). Pl.'s MPA 5. In relevant part, the provision states: "A civil action otherwise removable . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(c). This provision is known as the "forum-defendant rule." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d, 933, 937 (9th Cir. 2006).

Ayazi argues that, because the forum state is California and SCGC is a citizen of California, i.e., a "forum defendant," the forum-defendant rule bars SCGC from removal. Pl.'s MPA 5–6. SCGC counters that the forum-defendant rule requires a defendant to be "properly joined and served" before it bars removal. Opp'n 3–7. SCGC continues that, because it had not been served when it removed the case, the forum-defendant rule does not apply. Opp'n 1.

SCGC has furnished sufficient proof that the case falls within diversity jurisdiction and that the forum-defendant rule permitted SCGC to remove the case when it did.

*A. Diversity Jurisdiction*

The Court has authority to hear this case based on diversity jurisdiction. Both parties are citizens of different states because SCGC is a citizen of California and Ayazi is a citizen of North Carolina. Additionally, the amount in controversy exceeds the jurisdictional requirement because Ayazi's likely recovery for lost wages alone would be enough.

1. Diversity of Citizenship

The parties agree that SCGC is a citizen of California. *See* Compl. ¶ 2; Notice Removal ¶ 6. They disagree on Ayazi's citizenship for diversity purposes. Notice Removal ¶ 5; Pl.'s MPA 1. A natural person's citizenship depends on the state in which they are "domiciled." *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A person can have only one domicile, and "[a]

change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* at 750.

Ayazi acknowledges that he moved from California, his prior residence, to North Carolina, his new residence, and that he was physically present in North Carolina when he filed suit. He contests, though, that he did not intend to remain in North Carolina indefinitely. Pl.'s MPA 9–10. He states multiple times in his papers that he moved to North Carolina, intending to return to California. *See* Pl.'s MPA 9–12; Reply 7–9. Even so, "statements of intent are entitled to little weight when in conflict with facts." *Lew*, 797 F.2d at 750. The objective facts that courts look to include: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id.*

Here, the objective facts conflict with Ayazi's subjective expressions of intent. He sold his home in California and purchased one in North Carolina. Ayazi Decl. ¶¶ 6, 8. He transferred the North Carolina home to a living trust. Ayazi Decl. ¶ 10. He registered to vote in North Carolina. Ayazi Decl. ¶ 14. And he has a father, sister, and aunt who live there and support him while he looks for work. Ayazi Decl. ¶ 6. Altogether, Ayazi took affirmative steps to make North Carolina his indefinite, if not permanent, home.

Ayazi has attempted to rebut the notion that North Carolina is now his home. He moved out of California because it was not affordable, and he was trying to get a new job with his company so he could go back. Ayazi Decl. ¶¶ 4, 7, 9, 11. He purchased the North Carolina home because he did not want to dwindle his resources by paying rent, and he placed it in trust for estate planning purposes. Ayazi Decl. ¶¶ 8, 10. Finally, he points to bank accounts in California and family on his mother's side in California, suggesting that he has maintained some ties there. Ayazi Decl. ¶ 16. But these assertions do not disrupt the indefiniteness of his residence in North Carolina.

When a person moves to another state, "with an intention of remaining there for an indefinite time," that state is their domicile despite any "floating intention to return at some future period." *Goldwater Bank, N.A. v. Elizarov*, 822 F. Supp. 3d 1105, 1111 (C.D. Cal. 2026) (quoting *Gilbert v. David*, 235 U.S. 561, 569 (1915)).

Ayazi has recognized that his time in North Carolina is indefinite. In his email to SCGC, he stated, "I don't know what the future holds." *See* Henley Decl. ISO Notice Removal, Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 26-06224 RAO Date: October 16, 2026
Title: Mahan Ayazi v. Southern California Gas Company

In his Declaration, he stated that he would return to California "[i]f I am able to secure suitable employment and/or when my circumstances permit." Ayazi Decl. ¶ 15. Ayazi's expression of doubt and conditional plans reflect a floating intention to move back to California, not a present intent to do so.

Certainly, before Ayazi filed suit, he took action to change his circumstances. Still, at the time he filed suit, whether his circumstances would change was highly uncertain. Even though Ayazi applied for jobs at SCGC up until September 2024, he had been rejected each time. *See* Ayazi Decl. ¶¶ 11, 12. Despite his union advocating to reverse the termination, its efforts failed. *See* Ayazi Decl. ¶ 13. Lastly, while Ayazi initiated suit to possibly seek reinstatement, he has no guarantee that he will prevail or that the remedy will include reinstatement. *See* Ayazi Decl. ¶ 15.

Thus, unlike circumstances in which residence has a definite end point—for example, achieving an education,[1] obtaining custody of a child,[2] or completing a concrete professional project[3]—the point at which Ayazi might get his job back is uncertain. That uncertainty means that his residence is indefinite, regardless of whether he asserts that it is temporary. *See, e.g.*, *Elizarov*, 822 F. Supp. 3d at 1111 (finding residence in Florida indefinite even if it was a "temporary change" when it depended on the uncertainty of COVID-19 pandemic); *Hossein v. Cantor*, No. 2:23-cv-10418-JLS-SSC, 2024 WL 866534, at *2 (C.D. Cal. Feb. 29, 2024) (finding residence in California indefinite even if defendant planned to leave "in the near future" when it depended on "building up [a] music engineer career").

Ultimately, Ayazi laid down ties in North Carolina, establishing it as his home. His desire to move back to California does not rise beyond a floating intention to return. Therefore, SCGC has met its burden to prove that Ayazi resides in North Carolina with an intent to remain indefinitely. Given that Ayazi is domiciled in—i.e., a citizen of—North Carolina and SCGC is a citizen of California, the parties are diverse.

[1] *Satarco Kish Trading, LLC v. Wamar Int'l Grp., LLC*, No. 2:15-cv-06422-BRO-JC, 2016 WL 5937792, at *4 (C.D. Cal. Jan. 6, 2016).
[2] *Gaudin v. Remis*, 379 F.3d 631, 637 (9th Cir. 2004).
[3] *Lewis*, 797 F.2d at 752.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 26-06224 RAO Date: October 16, 2026
Title: Mahan Ayazi v. Southern California Gas Company

2. Amount in Controversy

SCGC has similarly met its burden to show that the case satisfies the amount in controversy requirement. If a complaint does not specify the amount of damages, the removing defendant bears the burden to establish, by a preponderance of the evidence, that the amount in controversy exceeds the threshold at the time of removal. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020). At issue are SCGC's assertions regarding Ayazi's damages for lost wages, emotional distress, punitive damages, and attorney's fees.

Courts calculate lost wages from the date of termination to the date of removal. *Mejia v. CHLN, Inc.*, No. 2:26-cv-05448-FLA-MAR, 2026 WL 2251582, at *2 (C.D. Cal. Aug. 4, 2026).[4]

Ayazi seeks compensation for "his past and future income and benefits." Compl. at 12. The last full year of his employment was 2023, in which he made $49,505.62 in gross compensation. Henley Decl. ¶¶ 12, 14 n.1. Ayazi casts doubt on the foundation for this evidence, Pl.'s MPA 13, but it is adequate. The Leave Administration Manager, Stephanie Henley, declared that (i) her responsibilities include familiarity with payroll records, (ii) SCGC regularly maintains such records, (iii) she personally reviewed Ayazi's compensation, and (iv) Ayazi's compensation reflects the $49,505.62 figure. Henley Decl. ¶¶ 9–14; *see Cagle v. C&S Wholesale Grocers, Inc.*, No. 2:13-cv-02134-MCE-KJN, 2014 WL 651923, at *8 (E.D. Cal. Feb. 19, 2014) (finding declaration from human resources director offered adequate foundation for lost earnings).

SCGC terminated Ayazi in September 2024, and it removed the case in June 2026. That is one year and nine months. Adding one year of compensation ($49,505.62) plus nine months

---

[4] Admittedly, courts in this district disagree on whether to calculate lost wages up to the date of removal or up to the projected date of trial. *Compare Ramirez v. Builder Servs. Grp., Inc.*, No. 5:22-cv-1571-JGB-KK, 2023 WL 115561, at *4 (C.D. Cal. Jan. 5, 2023) (citing cases that calculate up to the date of removal), *with Ulloa v. Cal. Newspaper Partners*, No. 2:20-cv-11776-JAK-AGR, 2021 WL 6618815, at *6 (C.D. Cal. Oct. 21, 2021) (citing cases that calculate up to the projected date of trial). Given that Ayazi's likely damages exceed the jurisdictional threshold without calculating up to the date of trial, the Court does not need to resolve the differing opinions on which end point to select.

($37,129.23) equals $86,634.85. Thus, the Court can realistically project Ayazi's claim to be $86,634.85 or more.[5]

Ayazi insists that SCGC should have pointed to a particular position to calculate lost wages. Reply 10. That information is unnecessary. His claims include wrongful termination and termination as a retaliatory act. *See* Compl. at 8–9, 11–12. Damages for those claims would be compensation for what Ayazi could have earned had he not been terminated. Had he not been terminated, he may have remained on disability benefits. Therefore, $49,505.62 per year, what he earned in disability benefits in 2023, is an appropriate basis. It is also a conservative basis because it is, in fact, what Ayazi was paid.

Given that SCGC has proffered evidence making it more likely than not that Ayazi will recover more than $75,000 if he prevails, the amount in controversy requirement is met. Thus, as party diversity and amount in controversy are met, the Court has subject matter jurisdiction.

*B. Forum-Defendant Rule*

Apart from contesting subject matter jurisdiction, Ayazi argues that SCGC improperly removed the case as a forum defendant. SCGC asserts that the statute allows it to remove the case to federal court before it is "joined and served" as a defendant, which is what SCGC did, performing a procedural maneuver called "snap removal." *See* Opp'n 3; *Casola*, 98 F.4th at 964.

The Ninth Circuit has not issued a binding decision on snap removal. *See Casola*, 98 F.4th at 964 (declining to decide the snap removal question). So, the Court must begin its analysis with the language of the statute. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 432 (1999). The plain language of the statute controls "unless it is ambiguous or leads to an absurd result." *In re Evans*, 69 F.4th 1101, 1105 (9th Cir. 2023).

The removal statute prohibits "any of the parties in interest properly *joined and served* as defendants" from removing a case to federal court. § 1441(b)(2) (emphasis added). The plain

[5] Because a lost wages calculation satisfies the amount in controversy requirement, the Court does not address emotional distress, punitive damages, or attorney's fees.

language indicates that a forum defendant that has not been "properly joined and served" may remove their case to federal court.[6]

Here, SCGC removed the case eighteen days after Ayazi filed the complaint and eight days before service. Pl.'s MPA 4, 7. Even though SCGC is a citizen of the forum state of California, it removed the case before Ayazi effected service. Notice Removal ¶ 6; Pl.'s MPA 7. Therefore, the plain language of the statute permits SCGC to remove the case as a defendant that was not yet properly served.

To overcome the snap removal issue, Ayazi proposes that § 1441(b)(2) is ambiguous. Reply 3. If the Court rejects his proposal, Ayazi has an alternative. He argues that a plain reading of the statute renders an absurd result: it would allow defendants to end-run the forum-defendant rule by "snap remov[ing]" a case before plaintiffs can serve them. *See* Pl.'s MPA 6–7.

1. Ambiguity

The forum-defendant rule unambiguously allows a defendant to remove the case prior to service. To find ambiguity, a court must determine that a statute is "susceptible to more than one reasonable interpretation." *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1173 (9th Cir. 2017).

Section 1441(b)(2) is not susceptible to more than one reasonable interpretation. Indeed, courts in the Ninth Circuit disagree on the statute's meaning. *See* Reply 1. But contrary to Ayazi's suggestion, a split in authority "does not itself establish ambiguity." *Cuellar de Osorio v. Mayorkas*, 695 F.3d 1003, 1012 (9th Cir. 2012), *rev'd on other grounds*, *Scialabba v. Cuellar de*

[6] This reading is reflected in the three circuit courts that squarely addressed the issue. *See Texas Brine Co. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Encompass Ins. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) (holding that a plain reading permits snap removal); *see also Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (expressing skepticism of snap removal but "assum[ing] *arguendo*" that the statute allows it). This reading also reflects the opinions of multiple courts in this district. *See, e.g.*, *Chan v. Good Driver Mutuality Inc.*, No. 2:26-cv-05094-MWF-AJR, 2026 WL 2190688, at *4–5 (C.D. Cal. July 28, 2026); *Sagebrush Health Servs. v. Amgen Inc.*, No. 2:26-cv-00466-MCS-PVC, 2026 WL 1030817, at *2 (C.D. Cal. Apr. 15, 2026), *appeal docketed*, No. 26-3248 (9th Cir. May 20, 2026); *Country Cas. Inc. v. Hyundai Motor Am.*, No. 8:24-cv-02428-SB-JDE, 2025 WL 242194, at *1 (C.D. Cal. Jan. 16, 2025).

*Osorio*, 573 U.S. 41 (2014) (noting multiple Supreme Court decisions finding statutes to be "unambiguous" despite circuit disagreement). Moreover, Ayazi's attempt to proffer an alternative reasonable interpretation falls short.

Ayazi invites the Court to adopt a theory espoused in *Estate of Joseph v. Sub Sea Systems*, No. 2:26-cv-00496-DAD-AC, 2025 WL 2307838 (E.D. Cal. Aug. 11, 2025). Pl.'s MPA 6; Reply 3–4. However, this theory would pit the Court's reading against controlling authority.

In *Estate of Joseph*, the court found that § 1441(b)(2) had multiple reasonable interpretations. 2025 WL 2307838, at *4. It relied on the reasoning from another case, *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313 (D. Mass. 2013). *See* 2025 WL 2307838, at *4. The *Gentile* court found that the plain language of § 1441(b)(2) prohibits snap removal because it contains the phrase "*any* of the parties in interest." 934 F. Supp. 2d at 318 (emphasis added). The term "any" means "one or more indiscriminately from all those of a kind." *Id.* This means that the phrase "any of the parties in interest" presumes multiple defendants. *Id.* Therefore, "any of the parties in interest properly joined and served" means that a plaintiff must have served at least one defendant already. *Id.* Thus, the forum-defendant rule impliedly requires that one defendant is served before another defendant can remove the case. *See id.*

The implied requirement that one defendant is served before another can remove conflicts with *Mayes v. American Hallmark Insurance Co. of Texas*, 114 F.4th 1077 (9th Cir. 2024). *Mayes* held, "Nothing in the [removal] statute's text can be construed as barring . . . removal before formal service." *Id.* at 1079. Put differently, "formal service is not a prerequisite to removal." *Id.* So, a reading of § 1441(b)(2) that establishes service as a prerequisite to removal would endorse an argument that the Ninth Circuit has "squarely rejected." *See Country Cas. Ins.*, 2025 WL 242194, at *1. Thus, the reading that Ayazi invites, one based on *Estate of Joseph*'s interpretation, is untenable.

Given that the only alternative interpretation would be unreasonable under Ninth Circuit case law, § 1441(b)(2) is not ambiguous. The plain meaning of the provision allows a forum defendant to remove a case until the defendant has been "properly joined and served."

2. Absurdity

The absurdity doctrine does not require the Court to depart from the language of the statute. Certainly, courts may look beyond the plain meaning if the results are absurd. *United States v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | CV 26-06224 RAO | Date: | October 16, 2026 |
| Title: | Mahan Ayazi v. Southern California Gas Company | | |

*Paulson*, 68 F.4th 528, 542 (9th Cir. 2023). But absurdity is a high bar. *Id.* It is not a "license for [courts] to disregard statutory text where it conflicts with our policy preferences." *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015). Rather, a court must conclude that "it is quite impossible that Congress could have intended the result," and the impossibility must be "so clear as to be obvious to anyone." *Id.* (quoting *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 471 (1989) (Kennedy, J., concurring)). Otherwise, courts must adhere to the plain meaning of a statute, even if the results are "harsh" or "misguided," so long as they are "at least rational." *Id.*

The consequences of the forum-defendant rule's language may seem misguided. As Ayazi points out, allowing forum defendants to remove a case before service alters the rule from an absolute restriction to one based on timing. Pl.'s MPA 6. Perhaps it would create a burden on state courts to quicken their procedures and cause Plaintiffs to "speed across cities" to serve defendants before removal. Pl.'s MPA 6. And surely, other courts in this district have found persuasive the argument that snap removal counteracts the general forum defendant prohibition. *See, e.g.*, *Simental v. Hanover Ins.*, No. 8:25-cv-01629-DOC-KES, 2025 WL 2675956, at *3–4 (C.D. Cal. Sep. 17, 2025) (noting issues with docket monitoring systems giving sophisticated defendants an unfair advantage); *see also Villasenor v. Quadient, Inc.*, No. 8:25-cv-00300-FWS-JDE, 2025 WL 958378, at *3–4 (C.D. Cal. Mar. 28, 2025) (surveying cases). Still, the issues that Ayazi and other courts have identified do not make it "quite impossible" that Congress intended this result.

It is "at least rational" that Congress intended to allow defendants to remove a case before plaintiffs serve them. That intention can be summarized as follows: "Congress reasonably could have selected service as a bright-line event that both prevents plaintiffs from defeating removal through fraudulent joinder and provides an administrable rule for courts and litigants." *Chan*, 2026 WL 2190688, at *4. Thus, it is not "obvious to almost anyone" that Congress intended something different. If Congress now intends something different, it can change the statute. *See Harrison v. Sonesta Int'l Hotels Corp.*, No. 2:23-cv-04867-SB-RAO, 2023 WL 5351873, at *3 (C.D. Cal. Aug. 18, 2023) ("The absurdity doctrine is not an interpretive canon that authorizes judicial correction of potential legislative flaws.").

Given that a plain reading of the forum defendant runs shy of implicating the absurdity doctrine, the Court will apply its plain and unambiguous meaning. Its language—"any of the parties in interest properly joined and served"—allows a forum defendant to remove the case before service. Here, SCGC properly removed the case to federal court because it did so before

Ayazi served it, and no other forum defendants were properly joined and served at the time of removal. Accordingly, there is no defect in removal.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is DENIED.

**IT IS SO ORDERED.**

: 

Initials of Preparer cd